IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| SCOTT FINCH and | ) |
| KRISTA FINCH PRUEHS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 08-cv-408-JPG |
| | ) |
| GARY W. FINCH; JOHN C. FINCH; | ) |
| ENDICOTT & FINCH; ENDICOTT, | ) |
| FINCH & BARNHART; WILLIAM | ) |
| RICHARD ENDICOTT; JASON M. | ) |
| BARNHART; and PATRICIA FINCH | ) |
| BARBER, | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motions to dismiss filed by defendant John C. Finch ("John") (Doc. 15) and defendants Gary W. Finch ("Gary"), Endicott & Finch, Endicott, Finch & Barnhart, William Richard Endicott and Jason M. Barnhart (collectively, the "Gary Finch defendants") (Doc. 17). Plaintiff Scott Finch ("Scott") has responded to the motions (Docs. 26 & 27), and the Gary Finch defendants have replied to that response (Doc. 28).

As a preliminary matter, the Court notes that Scott has filed an amended complaint since the defendants filed their motions to dismiss. The amended complaint omitted Krista Finch Pruehs ("Krista") as a defendant and added her as a plaintiff. No other substantive changes were made to the amended complaint. Ordinarily an amended complaint renders motions to dismiss aimed at the original complaint moot because the amended pleading supersedes the original pleading. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). However, in light of the lack of substantive change from the original to the amended pleading, the arguments in the pending motions to dismiss are still relevant and the Court will consider the pending motions to

be directed to the amended complaint.

**I.      Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic*, the Supreme Court held that this requirement is satisfied if the complaint (1) "describe[s] the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47 (1957)," *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl.*, 127 S. Ct. at 1964), and (2) "plausibly suggest[s] that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Servs.*, 496 F.3d at 776 (quoting *Bell Atl.*, 127 S. Ct. at 1965).

**II.     Allegations in Complaint**

As the reader is likely to guess from the names of the parties, this case involves members of a family. Plaintiff Scott is the son of Edwin Finch ("Edwin"), who is now deceased. Plaintiff Krista is Edwin's daughter and Scott's sister. Defendant Patricia Finch Barber ("Patricia") was Edwin's wife until he died. Defendants Gary and John are Edwin's brothers and Scott and Krista's uncles. Gary is an attorney, and Endicott & Finch ("E&F") and its successor Endicott, Finch & Barnhart ("EF&B"; collectively, the "law firms") are the names of the law firms of which he was a partner at various relevant times. E&F became EF&B in 2005. William Richard Endicott ("Endicott") and Jason M. Barnhart ("Barnhart") (collectively, the "law partners") were

2

Gary's law partners at certain relevant times. Gary's wife Margaret Finch ("Margaret"), now deceased, was an employee of E&F.

The plaintiffs allege essentially that, prior to Edwin's death in May 2005, Gary and employees of E&F prepared and forged trust documents ("Trust Amendment") that amended the Edwin B. Finch Revocable Living Trust ("Trust"), a trust settled and held in trust by Edwin in 1990 for his own benefit during his lifetime, and after his death to be held in trust jointly by Gary and John and to be distributed to Patricia, Scott and Krista at various times thereafter. The Trust Amendment named Gary alone as the successor trustee and was less favorable to Scott and Krista and more favorable to Patricia than the Trust as originally settled. The plaintiffs also allege that Gary and employees of E&F prepared and forged Edwin's will ("Will"), in which Edwin's property (with some exceptions) in the custody of certain financial institutions ("Estate") is left to the Trust, and obtained false witness statements. In addition, the plaintiffs allege that Gary forged Edwin's signature on a warranty deed ("Deed") conveying real property of Edwin's business to the Trust, that Margaret fraudulently notarized the Deed and that John falsely attested to Edwin's signature.

When Edwin died in May 2005, Gary became the trustee of the Trust and, by operation of the Will, certain assets of the Estate became Trust property. Gary filed the Will along with a small estate affidavit that had been prepared by E&F, signed by Gary and notarized by an E&F employee to facilitate the disposition of the Estate outside of probate. Via wire or mail, Gary then instructed the custodians of the Trust property to transfer the property according to the instructions in the Trust Amendment, including several disbursements to Patricia. Gary also transferred Edwin's life insurance proceeds to the Trust in accordance with the Trust Amendment. He further took steps to file tax returns on behalf of the Estate, including obtaining

3

a federal employer identification number, hiring and communicating with an accountant and filing several federal tax forms. Gary communicated with Patricia, Scott, Krista and others relating to the Trust property. Gary paid himself or his firm fees in the total amount of $32,500 from Trust assets.

The plaintiffs further charge that in executing this scheme involving the Trust Amendment and Will, Gary and his co-defendants committed bank fraud, wire fraud, mail fraud, received and transported stolen goods across state lines, and filed false tax returns.

In June 2008, Scott filed this action alleging two counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. In an amended complaint, Krista joined Scott as a plaintiff. They allege in Count I that Gary, John, the law firms and the law partners acquired and maintained control of the Trust and the Estate through a pattern of racketeering activity (bank fraud, wire fraud, mail fraud, receiving and transporting stolen goods across state lines, and filing false tax returns) in violation of 18 U.S.C. § 1962(b) or conspired to do so in violation of 18 U.S.C. § 1962(d). In Count II, they allege that Gary, John, Margaret (prior to her death), the law firms and the law partners are part of an enterprise over which Gary is the head and which has the goals of obtaining and maintaining control over the Trust and the Estate contrary to Edwin's actual estate plan, avoiding creditors' claims, compensating Gary, and covering up the enterprises fraudulent activity. The plaintiffs allege that Gary, John the law firms and the law partners have participated in the conduct of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) or conspired to do so in violation of 18 U.S.C. § 1962(d). The amended complaint also brings state law claims against Gary for conversion, tortious interference with expectancy and consumer fraud and seeks an accounting, to have Gary removed as trustee and to set aside the Trust Amendment. The plaintiffs allege

4

they have been damaged because the Trust assets have not been distributed to them in accordance with the original Trust document and the Trust continues to be depleted by distributions not in accordance with the original document.

John asks the Court to dismiss Counts I and II on the grounds that (1) the plaintiffs do not have standing because they have not alleged a compensable injury and (2) the plaintiffs have failed to state a claim, and to decline to exercise supplemental jurisdiction over the remaining state law claims (Doc. 15). The Gary Finch defendants ask the Court to dismiss Counts I and II on the grounds that the plaintiffs have failed to state a claim because they do not allege a pattern of racketeering activity and to dismiss the remaining state law claims for lack of subject matter jurisdiction in the absence of federal question jurisdiction over Counts I and II (Doc. 17).

## III.    Analysis

Counts I and II arises under 18 U.S.C. § 1964(c), which provides for private law suits based on RICO violations:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Thus, to adequately plead a civil RICO cause of action a plaintiff must allege (1) an "injur[y] in his business or property" (2) "by reason of" (3) the defendants' "violation of section 1962." *RWB Servs., LLC v. Hartford Computer Group*, 539 F.3d 681, 685 (7th Cir. 2008) (quoting 18 U.S.C. § 1964(c)). Section 1962[1] "outlaws the use of income derived from a pattern of

---

[1] The plaintiffs rely on § 1962(b), (c) and (d), which provide, in pertinent part:

(b)  It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or

5

racketeering activity to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise through a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985) (internal quotations omitted). RICO defines racketeering activity to include any predicate act indictable as mail fraud, wire fraud, bank fraud, or interstate transportation, receipt or sale of stolen property. 18 U.S.C. § 1961(1).

  A. <u>Standing: Compensable Injury</u>

John challenges the plaintiffs' standing to bring Counts I and II on the grounds that they have not alleged a compensable injury. A plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The injury caused need not be anything more than the injury from a predicate act; there is no requirement that some additional "racketeering injury" flow from the pattern of racketeering in addition to the injury from its predicate acts. *Id.* at 497.

John argues that the damage alleged by the plaintiffs is derivative and not direct and that, as a consequence, they have no standing to bring this suit. In support of his argument that such

---

  foreign commerce.

  (c) It shall be unlawful for any person . . . by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

  (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

an injury is insufficient to support a civil RICO claim, he cites *Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990). In *Sears*, Court of Appeals held that individual shareholders did not have standing to bring a civil RICO action based on the diminution in value of their stock. *Id.* at 892. The Court of Appeals held that the RICO claim belonged to the corporation, not the individual shareholders who suffered no direct injury. *Id.*[2]

This case is not like *Sears*. Here, the plaintiffs' injury is direct, and he has standing to sue as a beneficiary of the Trust. They were entitled to certain sums under the original Trust document. For example, upon Edwin's death, Scott and Krista were to each receive one-third of the Trust income (after certain property was used for other purposes) for five years, then were to receive one-third of the Trust assets, *see* Compl. Ex. A, Edwin B. Finch Revocable Living Trust dated Dec. 1, 1990, § V, ¶¶ E & F. Under the Trust Amendment, Scott and Krista are no longer entitled to those payments at those times. Instead, under the Trust Amendment, Scott's and Krista's inheritance may have to wait until Patricia's death, may be depleted, may be subject to her power of appointment, may be at the discretion of the Trustee and may have to be shared with a third child not mentioned in the original Trust document. *See* Compl. Ex. B, Amendment to the Edwin B. Finch Revocable Living Trust Dated December 1, 1990, dated April 25, 2005, arts. 3-8. Scott and Krista have been directly injured by the alleged wrongdoing in that they have not received certain funds due to them under the original Trust document, and the funds from the Estate are now being depleted because of the alleged unlawful acts of the defendants. This is sufficiently direct injury to support standing to bring this civil RICO claim.

---

[2]John also cites a district court case, *Firestone v. Galbreath*, 747 F. Supp. 1556 (S.D. Ohio 1990), which the Court does not find persuasive. That case involved injury to a decedent and her estate, not injury to the beneficiaries of the decedent's estate directly. *Id.* at 1568.

John further argues that the plaintiffs have no standing because they were not the victims of the bank frauds alleged as a predicate act to their civil RICO claim. In support of that position, John cites *Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004), which he apparently believes holds that bank fraud cannot be the basis for a civil RICO action by anyone other than the bank defrauded. This is not *Bressner*'s holding. The *Bressner* court dismissed the plaintiff's civil RICO action not because bank fraud cannot support an individual's civil RICO claim but because the plaintiff in that case had not alleged a fraud on a bank. *Id.* at 482. *Bressner* has no application to this case, where the plaintiffs have clearly alleged that John and other defendants participated in a scheme to defraud financial institutions by presenting forged documents in order to gain control over assets in custody of those institutions.

B.       Particularity of Mail and Wire Fraud Pleading

John argues that the plaintiffs have not pled fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Specifically, he charges the complaint does not describe with particularity the content of the letters alleged to support the mail fraud predicate acts. He further argues that the letters cited cannot support the civil RICO claim because they were sent after the scheme had reached its fruition, that is, when Edwin died and Gary received control over the Trust and the Estate.

John's pleading particularity argument has some merit. It is well-established that allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Rule 9(b) requires pleading all averments of fraud with particularity. *Id.*; *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). "Accordingly, a RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and

8

state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Slaney*, 244 F.3d at 597; *Vicom, Inc. v. Harbridge Merchant Servs. Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *Midwest Grinding*, 976 F.2d at 1020 ("[T]he complaint must, at minimum, describe the predicate acts with some specificity and state the time, place and content of the alleged communications perpetrating the fraud." (internal quotations omitted)). Where the predicate acts are mail or wire fraud[3], the plaintiff must allege who made the communication, the time, place and content of the communication, and the method by which the communication was made. *Slaney*, 244 F.3d at 599.

It is true that not all of the plaintiffs' allegations of mail or wire fraud are pled with the requisite specificity. For example, ¶ 28(c) of the complaint alleges generally that "the conspirators used the instrumentalities of interstate wire or radio communication, and/or the Mails, to obtain the signatures of John, then a resident of Florida, and Margaret on the purported Will. . . ." This allegation does not identify the person who made the communication, the time, place or content of the communication, or the specific method by which the communication was made. Thus, the allegations in ¶ 28(c) do not adequately plead mail or wire fraud as a predicate act to a civil RICO claim. The same is true for numerous other allegations of mail or wire fraud in the complaint, and those allegations simply cannot support a civil RICO claim.[4]

---

[3]Essentially, mail fraud is committed when someone mails anything via the United States Postal Service for the purpose of executing a scheme to defraud. *See* 18 U.S.C. § 1341. Likewise, wire fraud is committed when someone uses a wire transmission for the purpose of executing a scheme to defraud. *See* 18 U.S.C. § 1343.

[4]In the absence of specific paragraph-by-paragraph arguments from the parties, the Court declines to list *sua sponte* the paragraphs it deems insufficiently pled. Suffice it to say, however, that most allegations of mail or wire fraud in the complaint fall short of Rule 9(b)'s requirements.

However, even discounting all mail or wire fraud allegations, which may or may not be appropriate, the bank fraud and transportation, sale or receipt of stolen goods allegations remain. In the absence of any argument that those allegations are not pled with the requisite specificity, the Court will not dismiss Counts I and II because they do not comply with Rule 9(b).

      C.      <u>Pattern of Racketeering Activity</u>

John and the Gary Finch defendants claim that the plaintiffs have failed to allege a "pattern of racketeering activity," an essential element for a RICO claim based on § 1962(b) or (c). A "'pattern of racketeering activity' requires at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." § 1961(5). Two acts, however, may not be enough to establish a pattern. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985); *see H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 236-37 (1989); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992). A pattern requires "continuity plus relationship." *Sedima*, 473 U.S. at 496 n. 14.; *accord Midwest Grinding*, 976 F.2d at 1022.

To establish the relationship part of the test, the plaintiff must show the predicate acts are related to each other. The *H.J.* Court adopted the description of a "pattern" contained in the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e), where acts are considered related if they "have the same or similar purposes, results, participants, victims, or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated events." *See H.J.*, 492 U.S. at 240. In this case, the alleged acts of racketeering, even those found to be insufficiently pled under Rule 9(b), appear to be related to each other. Thus, the Court focuses on the continuity prong of the test.

To satisfy the continuity requirement, the predicate acts must "amount to, or . . .

otherwise constitute a threat of, *continuing* racketeering activity." *Id.* (emphasis in original). Continuity can be closed-ended (where the criminal conduct has come to an end) or open-ended (where the conduct threatens to continue into the future). Closed-ended continuity is established where the series of related predicate acts occurred over a substantial period of time, that is, more than a few weeks or months, with the implicit threat of future criminal conduct. *Id.* at 242; *see Midwest Grinding*, 976 F.2d at 1022. Open-ended continuity is established where past conduct of insubstantial duration carries by its nature a threat of repetition in the future. *H.J.*, 492 U.S. at 241-42; *Midwest Grinding*, 976 F.2d at 1023. To determine whether there is continuity, courts should consider "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986); *accord Vicom, Inc. v. Harbridge Merchant Servs. Inc.*, 20 F.3d 771, 780 (7th Cir. 1994); *Midwest Grinding*, 976 F.2d at 1023-24. Courts should "evaluate the allegations with the goal of 'achieving a natural and commonsense result, consistent with Congress's concern with long-term criminal conduct.'" *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake Co., Ill.*, 424 F.3d 659, 673 (7th Cir. 2005)); *accord Vicom*, 20 F.3d at 780.

    1.    <u>Count I</u>

The allegations in Count I lack the continuity required to state a civil RICO cause of action. In Count I, the plaintiffs allege acts beginning in or around April 2005 that were taken to acquire control over the Estate and the Trust by forging the Will and Trust Amendment facilitated by mail or wire communications. They further allege acts taken to administer the Trust pursuant to the allegedly forged Trust Amendment and to file estate tax documents, also

facilitated by mail or wire communications, from June 2005 to December 2007. Finally, they allege the payment of fees to Gary accomplished by mail or wire communications in or around February 2006 and January 2007.

This case resembles *United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261 (7th Cir. 1990), in which United States Textiles, a t-shirt manufacturing company, accused Anheuser-Busch of extorting a t-shirt sales contract that included discounts. *Id.* at 1264. It also alleged that each of the numerous t-shirt orders and shipments under the contract in the two years following the contract constituted a separate act of mail or wire fraud. *Id.* The Court of Appeals found United States Textiles had not alleged a pattern of racketeering activity because each instance of mail or wire fraud related back to the extortion achieved in the contract and was simply a manifestation of the injury that was complete at the execution of the extortionary contract. *Id.* at 1268. In so holding, the Court of Appeals cited with approval the Third Circuit Court of Appeals:

> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its "natural and common sense approach to RICO's pattern element," we think it unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.

*Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 597 (3d Cir. 1990), *quoted in United States Textiles*, 911 F.2d at 1268. The *United States Textiles* Court further found that there was a single victim and no threat of repetition. *Id.* at 1269. It further found that, although injury was inflicted by the use of wire and mail communications, the injuries were not distinct because they all flowed from the single contract and were not the type of injuries Congress intended to

compensate under RICO. *Id.* at 1269.

This case is indistinguishable from *United States Textiles*. As in that case, the majority of the predicate acts were wire or mail fraud with one or two instances of bank fraud and transportation of stolen goods across state lines thrown in. The crux of the scheme, however, was obtaining control over Edwin's Estate by forging the Will and Trust Amendment, which was completed in April 2005. Indeed, control of the assets passed in May 2005 when Edwin died, bringing the scheme to fruition. The subsequent mail and wire fraud allegations related back to the forgeries and simply reflect the length of time it took the plaintiffs to feel the injuries inflicted by the April 2005 forgeries. As the *Marshall-Silver* observation implies, it would be absurd to find that the duration of the scheme depended on the complexity of the Will and Trust Amendment and the length of time required to implement them.

As for the specific *Morgan* factors indicating continuity, the duration of the acts in Count I is simply insubstantial. Obtaining the documents by which control of the Trust and the Estate assets passed to Gary's control was a brief process taking several weeks at the most in April 2005. Once those documents were obtained and Edwin died, the scheme was over and control of the Trust and the Estate assets had been acquired according to the plan of the scheme. As noted above, while the injury flowing from those forgeries occurred over the years that followed, the scheme was achieved in mid-2005, and there is simply nothing indicating a threat that further forgeries leading to other acts to defraud other victims – or even the same victims in another context – would be committed. *Compare Ticor Title Ins. Co. v. Florida*, 937 F.2d 447 (9th Cir. 1991) (threat of future criminal conduct found where defendants forged three tax lien releases in 13-month period in connection with three separate real estate transactions).

Furthermore, even if the Court considers the alleged post-forgery predicate acts, the

13

number and variety of those acts weigh against finding a pattern of racketeering activity. As noted earlier, the vast majority of the predicate acts alleged in Count I are mail and wire fraud. Courts must be cautious when RICO actions rely primarily on mail or wire fraud. "[M]ultiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity.'" *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024-25 (7th Cir. 1992) (quoting *United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990)); *accord Vicom, Inc. v. Harbridge Merchant Servs. Inc.*, 20 F.3d 771, 781 (7th Cir. 1994). Courts do "not look favorably on relying on many instances of mail and wire fraud to form a pattern." *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990); *accord Vicom*, 20 F.3d at 781. Here, the alleged mail and wire fraud involve a small circle of people potentially involved in the distribution of the assets of the Estate, but their number is not a reliable indicator that they will continue, especially in light of the fact that they are tied to a single scheme to alter a single estate plan. Even in combination with the other alleged predicate acts, they do not reflect a long-term criminal operation constituting a pattern of racketeering activity.

In addition, the number of victims of the alleged scheme is few – Edwin's family members who might have had a larger inheritance and a greater interest in the Trust under the documents in place prior to the Will and Trust Amendment and a few other entities that might have taken under the original Trust document – and the injury suffered by all was essentially one injury – the disruption of Edwin's estate plan that would have benefitted them.

The plaintiffs' reliance on *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986), is misplaced. First, *Morgan* is of limited value in light of the fact that it preceded the Supreme Court's decision in *H.J.*, the most authoritative source for the meaning of "pattern of racketeering activity." Although *Morgan*'s listing of relevant factors to determine whether a pattern of

racketeering activity exists remains valid, *H.J.* added important nuances to the application of that test, including an emphasis on the threat of long-term criminal activity.

Second, *Morgan*'s facts are distinguishable from those in the case at bar. *Morgan* involved (1) false representations to induce the plaintiffs to invest in a series of corporations and to use their house as security for certain loans, (2) the removal of assets from one of the corporations and a foreclosure sale of the corporation, (3) the removal of assets from the purchasing corporation and a second foreclosure sale, at which point the lending bank sought to collect a deficiency judgment by taking the plaintiffs' home. *Id.* at 972. All of this occurred over a four-year period and involved multiple mailings. *Id.* The Court of Appeals found that continuity existed because the acts of mail fraud were distinct, some relating to the initial loan transaction and some relating to the foreclosure sales years later, and occurred over four years. *Id.* at 976. The predicate acts alleged in the case at bar are distinguishable because, as explained above, they related back to the initial forgeries.

In fact, the case at bar more resembles *Lipin Enters. v. Lee*, 803 F.2d 322 (7th Cir. 1986), a case cited in *Morgan*. In *Lipin*, the plaintiff alleged that the defendants defrauded him in connection with a single acquisition of stock involving many false statements. The Court of Appeals found that the multiple predicate acts occurred in a short period of time, related to the same transaction, involved a single scheme, a single victim and a single injury and did not constitute a "pattern of racketeering activity." *Id.* at 324. The *Morgan* Court observed of *Lipin*:

> It is true that plaintiff was able to point to multiple predicate acts: a false statement made during negotiations for the sale, false financial statements, a false opinion letter from the attorneys, false financial statements, and a false statement that the financial statements were accurate. The existence of multiple predicate acts in *Lipin,* however, is only because the acquisition of stock in this context is a complicated transaction that requires many separate statements from a variety of persons: financial statements from the accountants, opinions from the lawyers,

15

> oral statements from the parties negotiating the sale, and so forth. All of these
> predicate acts still relate to but a single act: an acquisition of a large block of
> stock. The mere fact that the complexity of the transaction generates numerous
> pieces of paper and hence a greater number of possible fraudulent acts does not
> make these predicate acts ongoing over a period of time so as to constitute
> separate transactions that are distinct in time and place.

*Morgan*, 804 F.2d at 976. The same is true for this case. The existence of multiple predicate acts is only because acquiring control over Edwin's Estate was a complex transaction that required many separate communications and does not indicate a pattern of racketeering activity.

In sum, Count I does not exhibit the continuity required to support a civil RICO claim. There is simply no threat that wresting control over the Estate and the Trust will be repeated; it has already been accomplished with respect to Edwin's Estate, and nothing suggests other estate plans are at risk from the defendants' acts or that the defendants could hatch another scheme to further defraud the plaintiffs in another context. There is no indication that the defendants regularly conduct acts like the predicate acts – mail fraud, wire fraud, bank fraud and transportation of stolen goods – for the criminal purpose of obtaining control over the estates – or any assets, for that matter – of others. In truth, the natural and commonsense interpretation of Count I is that it is a run-of-the-mill probate matter more appropriate for state court, not the type of organized, long-term criminal activity RICO was enacted to prevent.

    2.    Count II

The allegations in Count II also lack the continuity required to state a civil RICO cause of action. In Count II, the plaintiffs allege that the defendants' association-in-fact was an informal enterprise and that the defendants conducted the affairs of that enterprise through a pattern of racketeering activity, namely, the racketeering activities alleged in Count I. The alleged predicate acts form no more of a pattern in the context of Count II than they do in Count I. For

this reason, Count II is subject to dismissal for failure to allege a pattern of racketeering activity. In light of this ruling, the Court need not address the argument that no enterprise existed apart from the predicate acts.

### 3. Violations of § 1962(d)

The plaintiffs claimed violations of § 1962(d) cannot survive because they, too, depend on the allegation of a pattern of racketeering activity. Agreement is the cornerstone of a civil RICO conspiracy claim. *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 961 (7th Cir. 1996). To commit a civil RICO conspiracy, the alleged conspirators must agree "to conduct or participate in the affairs of an enterprise [or to acquire or maintain any interest in or control of any enterprise] through a pattern of racketeering activity." *Id.* (internal quotations omitted; brackets in original). Here, because the predicate acts do not amount to a pattern of racketeering activity, any agreement to commit them cannot amount to a RICO conspiracy. Therefore, the Court will also dismiss § 1962(d).

### D. State Law Claims

The Court had at the time this case was filed, and continues to have, jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a), which extends supplemental federal jurisdiction to all claims that are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy. However, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending, a district court should consider judicial economy, convenience, fairness and comity. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

343, 350 (1988)). "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251).

The Court has considered the relevant factors and finds that it is appropriate not to exercise supplemental jurisdiction over the remaining state claims in this case. The Court firmly believes that Illinois state courts are far better equipped to hear cases that turn on the interpretation and application of state law, especially those that involve probate matters. As a matter of comity and efficiency, such cases should rest with the state court system. Furthermore, it would be no less convenient for the plaintiffs to proceed in an Illinois state court than in a federal court in Illinois, and the Court sees no unfairness that would result from litigation in a state forum. For these reasons, the Court declines to exercise jurisdiction over Counts III through VI and will dismiss those claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the foregoing reasons, the Court

- **GRANTS** John's motion to dismiss (Doc. 15);

- **GRANTS** the Gary Finch defendants' motion to dismiss (Doc. 17);

- **DISMISSES** Counts I and II **with prejudice**;

- **DISMISSES** Counts III through VI **without prejudice**; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: February 9, 2009.**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**